1   Tyler J. Woods (State Bar No. 232464)
      twoods@trialnewport.com
2   Richard H. Hikida (State Bar No. 196149)
      rhikida@trialnewport.com
3   Scott J. Ferrell (State Bar No. 202091)
      sferrell@trialnewport.com
4   **NEWPORT TRIAL GROUP**
    A Professional Corporation
5   895 Dove Street, Suite 425
    Newport Beach, CA  92660
6   Tel: (949) 706-6464
    Fax: (949) 706-6469
7
    Attorneys for Plaintiff
8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11   THERMOLIFE INTERNATIONAL, LLC,   Case No.  **CV12-09229 GAF (FFMx)**

12              Plaintiff,            **COMPLAINT FOR PATENT INFRINGEMENT**

13              vs.                   **JURY TRIAL DEMANDED**

14   BETTER BODY SPORTS, LLC;
     BIO-ENGINEERED SUPPLEMENTS
15   AND NUTRITION, INC.;
     ALLMAX NUTRITION INC.;
16   BRONSON LABORATORIES, INC.;
     ENGINEERED SPORTS
17   TECHNOLOGY, LLC;
     HI-TECH PHARMACEUTICALS, INC.;
18   INFINITE LABS, LLC;
     LECHEEK, LLC;
19   MAXIMUM HUMAN PERFORMANCE,
     LLC;
20   MUSCLE WARFARE, INC.;
     NUTREX RESEARCH, INC.;
21   PHARMAFREAK HOLDINGS INC.;
     PURUS LABS, INC.;
22   REACTION NUTRITION, LLC;
     REDEFINE NUTRITION LLC;
23   SNI, LLC;
     TIGER FITNESS INC.;
24   LONE STAR DISTRIBUTION; and
     ALL STAR HEALTH,
25
                Defendants
26

27

28

Plaintiff Thermolife International, LLC ("Plaintiff") hereby alleges for its Complaint against Better Body Sports, LLC; Bio-Engineered Supplements and Nutrition, Inc.; Allmax Nutrition Inc.; Bronson Laboratories, Inc.; Engineered Sports Technology, LLC; Hi-Tech Pharmaceuticals, Inc.; Infinite Labs, LLC; Lecheek, LLC; Maximum Human Performance, LLC; Muscle Warfare, Inc.; Nutrex Research, Inc.; PharmaFreak Holdings Inc.; Purus Labs, Inc.; Reaction Nutrition, LLC; Redefine Nutrition LLC; SNI, LLC; Tiger Fitness Inc.; Lone Star Distribution; and All Star Health (collectively "Defendants"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

## I.   THE PARTIES

1.    Plaintiff is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1811 Ocean Front Walk in Venice, California, 90291.

2.    Plaintiff is the owner and assignee of United States Patent No. 8,202,908 ("the '908 patent") titled "D-Aspartic Acid Supplement," and Plaintiff licenses the '908 patent to several third-parties and is in negotiations to license the patents to numerous other parties.

3.    Defendant Better Body Sports, LLC ("Better Body Sports") is a company organized and existing under the laws of California with a principal place of business at 5100 Telegraph Road in Ventura, California, 93003.

4.    Defendant Bio-Engineered Supplements and Nutrition, Inc. ("BSN") is a corporation organized and existing under the laws of Florida with a principal place of business at 5901 Broken Sound Pkwy. in Boca Raton, Florida, 33478-2773.

5.    Defendant Allmax Nutrition Inc. ("Allmax") is a corporation organized and existing under the laws of Ontario, Canada, with a principal place of business at 4576 Yonge Street, Suite 509 in Toronto, Ontario, Canada, M2N 6N4.

6.    Defendant Bronson Laboratories, Inc. d/b/a Performance Edge ("Performance Edge") is a corporation organized and existing under the laws of New

COMPLAINT FOR PATENT INFRINGEMENT

York with a principal place of business at 70 Commerce Drive in Hauppauge, New York, 11788.

7. Defendant Engineered Sports Technology, LLC d/b/a EST Nutrition ("EST Nutrition") is a company organized and existing under the laws of Florida with a principal place of business at 7217 East Colonial Drive in Orlando, Florida, 32805.

8. Defendant Hi-Tech Pharmaceuticals, Inc. d/b/a Hi-Tech ("Hi-Tech") is a corporation organized and existing under the laws of Georgia with a principal place of business at 6015-B Unity Drive in Norcross, Georgia, 30071.

9. Defendant Infinite Labs, LLC ("Infinite Labs") is a company organized and existing under the laws of Florida with a principal place of business at 2518 St. Ignatius Ct. in Orlando, Florida, 32835.

10. Defendant Lecheek, LLC ("Lecheek") is a company organized and existing under the laws of Arkansas with a principal place of business at 124 Country Club Road in Harrison, Arkansas, 72601.

11. Defendant Maximum Human Performance, LLC ("MHP") is a company organized and existing under the laws of New Jersey with a principal place of business at 21 Dwight Place in Fairfield, New Jersey, 07004.

12. Defendant Muscle Warfare, Inc. ("Muscle Warfare") is a company organized and existing under the laws of Florida with a principal place of business at 3133 Fortune Way #1 in Wellington, Florida, 33414.

13. Defendant Nutrex Research, Inc. ("Nutrex") is a corporation organized and existing under the laws of Florida with a principal place of business at 579 South Econ Circle in Oviedo, Florida, 32765.

14. Defendant PharmaFreak Holdings, Inc. ("Pharma Freak") is a corporation organized and existing under the laws of Ontario, Canada with a principal place of business at 542 Mount Pleasant Road in Toronto, Ontario, M4S 2M7, Canada.

15. Defendant Purus Labs, Inc. ("Purus") is a corporation organized and existing under the laws of Texas with a principal place of business at 11370 Pagemill

Road in Dallas, Texas, 75243.

16.     Defendant Reaction Nutrition, LLC ("Reaction") is a company organized and existing under the laws of Pennsylvania with a principal place of business at 230 East Main Street in Carnegie, Pennsylvania, 15106-2700.

17.     Defendant Redefine Nutrition LLC d/b/a Finaflex ("Finaflex") is a company organized and existing under the laws of Georgia with a principal place of business at 2955 Fantasy Lane in Decatur, Georgia, 30033-5818.

18.     Defendant SNI, LLC ("SNI") is a company organized and existing under the laws of New York with a principal place of business at 53 Merrick Road, Suite 218 in Freeport, New York, 11520.

19.     Defendant Tiger Fitness Inc. d/b/a Ethitech ("Ethitech") is a corporation organized and existing under the laws of Ohio with a principal place of business at 3049 Madison Road in Cincinnati, Ohio, 45209.

20.     Defendant Lone Star Distribution ("Lone Star") is a company organized and existing under the laws of Texas with a principal place of business at 11370 Pagemill Road in Dallas, Texas, 75243.

21.     Defendant All Star Health ("All Star") is a company organized and existing under the laws of California with a principal place of business at 59591 Skylab Road in Huntington Beach, California, 92647.

## II.     JURISDICTION AND VENUE

22.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

23.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

24.     This Court has personal jurisdiction over Defendants.  By way of example and without limitation, Defendants, directly or through intermediaries (including distributors, retailers, and others), ship, distribute, offer for sale, sell, and advertise the following dietary supplement products in the United States, the State of California, and

the Central District of California, collectively referred to as the "accused products":

  a. "D-Aspartic Acid" (Defendant Better Body Sports);

  b. "Hyper FX" and "Evotest" (Defendants BSN, Lone Star, and All Star);

  c. "D-Aspartic Acid" (Defendants Allmax and All Star);

  d. "DAA Pure" (Defendant Performance Edge);

  e. "Propadrol" (Defendants EST Nutrition and All Star);

  f. "Bulasterone" (Defendants Hi-Tech, Lone Star, and All Star);

  g. "Dagger" (Defendants Infinite Labs and All Star)

  h. "Intratest Xtreme"; "Speed X3"; and Testodrol X9 (Defendants Lecheek and Lone Star);

  i. "X-Fit Power" (Defendants MHP, Lone Star, and All Star);

  j. "NMDA," "MOAB," "Nuke," and "Napalm" (Defendant Muscle Warfare);

  k. "T-Up" (Defendants Nutrex, Lone Star, and All Star);

  l. "Anabolic Freak" (Defendant Pharma Freak);

  m. "D-pol" (Defendants Purus, Lone Star, and All Star);

  n. "Warrior" and "Vitality DM" (Defendants Reaction and All Star);

  o. "Pure Test"; "Revolution PCT"; and "Ignite 2" (Defendants Finaflex, Lone Star, and All Star);

  p. "V30+" (Defendant SNI); and

  q. "D-Aspartic Acid" (Defendant Ethitech).

  25. Defendants have purposefully and voluntarily placed the accused products into the stream of commerce with the expectation that they will be purchased in the Central District of California, and the products are actually purchased in the Central District of California.

/ / /

/ / /

/ / /

COMPLAINT FOR PATENT INFRINGEMENT

### III.   THE DEFENDANTS' INFRINGING PRODUCTS

A.   **FACTS COMMON TO ALL INFRINGING PRODUCTS AND EACH DEFENDANT**

26.   All of the accused products purport to and do increase the levels of testosterone in adult male humans.

27.   All of the accused products are administered by oral ingestion.

28.   All of the accused products contain a D-aspartic acid compound comprised from D-aspartic acid, D-Aspartate salts, or D-aspartate esters.

29.   All of the accused products are targeted to and taken primarily by adult male humans.

30.   All of the accused products purport to contain and actually contain a D-aspartic acid compound which is, according to the products' instructions for use, to be administered and is administered in an amount and for a time sufficient to increase the levels of testosterone in end-users.

31.   At least ten of the twenty-five accused products purport to and do contain the D-aspartic acid compound in an amount per serving which, when taken according to the products' instructions for use, is administered in an amount of more than one gram, but less than 20 grams, per day.

32.   Defendants' accused products are virtually the same in respects relevant to the '908 patent.  For instance, they are marketed to the same athlete and bodybuilding market, their testosterone-boosting claims are virtually identical, and the process of their manufacture is virtually identical and governed by the same set of laws and regulations.

33.   The development and support for Defendant's testosterone-boosting claims arise out of the same groundwork of scientific research, namely, the method disclosed in the '908 patent.

34.　The method of manufacture of the accused products with respect to the inclusion of the d-aspartic acid compound in the products is the same or virtually the same.

35.　The acts of Defendants' infringement have occurred during the same time period, namely, since the issuance of the patent in June 2012 through to the present day.

36.　Defendants BSN, Hi-Tech, Lecheek, MHP, Nutrex, Purus, and Finaflex have a close relationship with Lone Star, which distributes and sells their products, including the accused products.

37.　Defendants BSN, Allmax, EST Nutrition, Hi-Tech, Infinite Labs, MHP, Nutrex, Purus, Reaction, and Finaflex have a close relationship with All Star, which distributes and sells their products, including the accused products.

38.　All of the Defendants have damaged Plaintiff, and Plaintiff therefore seeks, among other remedies, the remedy of lost profits as against each Defendant.

**B.　PRODUCT-SPECIFIC DETAILS**

**"D-Aspartic Acid" (Defendant Better Body Sports' Infringing Product)**

39.　Defendant Better Body Sports ships, distributes, offers for sale, sells, and advertises the product "D-Aspartic Acid," and the product is marketed under the Better Body Sports brand of products.

40.　The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.　The product contains "D-Aspartic Acid."

    b.　It is to be taken by oral ingestion.

    c.　"Studies in Italy suggest D-Aspartic Acid may support testosterone and LH levels.  D-Aspartic Acid has quickly become a popular supplement for muscle building enthusiasts."

    d.　"As a dietary supplement take 4 capsules daily."

    e.　A serving size (4 capsules) contains 3 grams of D-Aspartic Acid.

/ / /

**"Hyper FX" (One of Defendant BSN's Infringing Products)**

41.     Defendant BSN ships, distributes, offers for sale, sells, and advertises the product "Hyper FX," and the product is marketed under the "BSN" brand of products.

42.     Defendant Lone Star is a distributor of Defendant BSN's products, including Hyper FX, and ships, distributes, offers for sale, sells, and advertises the product.

43.     Defendant All Star is a retailer and distributor of Defendant BSN's products, including Hyper FX, and ships, distributes, offers for sale, sells, and advertises the product.

44.     The labels and advertisements for the Hyper FX product state, as relevant to this matter and without limitation, as follows:

  a. The product contains "D-Aspartic Acid."

  b. It is to be taken by oral ingestion.

  c. "ingredients are designed to support…Testosterone"

  d. "mix 1 level scoop with 3-6 oz of water and drink immediately on an empty stomach"

  e. "For best results, use a second level scoop at least 4 hours after using the first level scoop"

**"Evotest" (Defendant BSN's Second Infringing Product)**

45.     Defendant BSN ships, distributes, offers for sale, sells, and advertises the product "Evotest," and the product is marketed under the "BSN" brand of products.

46.     Defendant Lone Star is a distributor of Defendant BSN's products, including Evotest, and ships, distributes, offers for sale, sells, and advertises the product.

47.     Defendant All Star is a retailer and distributor of Defendant BSN's products, including Evotest, and ships, distributes, offers for sale, sells, and advertises the product.

48.   The labels and advertisements for the product Evotest state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "D-Aspartic Acid."

    b.  It is to be taken by oral ingestion.

    c.  "BSN's first concentrated powdered testosterone support supplement"

    d.  "BSN is hoping to get consumers to expect more performance out of their testosterone support supplement and see the difference this novel formula can make"

    e.  "not intended for use by women"

    f.  "mix 1 scoop with 6 oz. of water twice daily"

    g.  "cutting-edge ingredients like....d-aspartic acid"

    h.  "EVOTEST ingredients when used as directed, at maximum dosage, over time, combined with a healthy diet and regular exercise are designed for testosterone support"

**"D-Aspartic Acid" (Defendant Allmax's Infringing Product)**

49.   Defendant Allmax ships, distributes, offers for sale, sells, and advertises the product "D-Aspartic Acid," and the product is marketed under the "Allmax" brand of products.

50.   Defendant All Star is a retailer and distributor of Defendant Allmax's products, including D-Aspartic Acid, and ships, distributes, offers for sale, sells, and advertises the product.

51.   The labels and advertisements for Allmax's product D-Aspartic state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "D-Aspartic Acid."

    b.  It is to be taken by oral ingestion.

    c.  "Boosts Natural Testosterone"

    d.  "Recent human clinical research using oral dosages of 3.12 g of D-Aspartic Acid revealed dramatic increases in Testosterone of 42% on

**COMPLAINT FOR PATENT INFRINGEMENT**

average in just 12 days. ALLMAX has created a stand-alone Essentials form of this ingredient, which allows you to precisely control and tmiing [sic] and cycling."

   e. "Mix 1 teaspoon (3.12 g) of ALLMAX D-Aspartic Acid in water or juice daily upon waking."

   f. "Athletes and bodybuilders looking for a natural boost in their testosterone have found that a 2-week on and 1-week off cycle and repeat works best."

   g. The product contains 3.12 grams per serving of D-Aspartic Acid.

**"DAA Pure" (Defendant Performance Edge's Infringing Product)**

52.   Defendant Performance Edge ships, distributes, offers for sale, sells, and advertises the product "DAA Pure" and the product is marketed under the "Performance Edge" brand of products.

53.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

   a. The product contains "D-Aspartic Acid."

   b. It is to be taken by oral ingestion.

   c. "D-aspartic acid is a physiological amino acid occurring principally in the pituitary gland and testes and has a role in the regulation of the release and synthesis of LH and testosterone in humans and rats."

   d. "Performance Edge introduces the latest in researched and scientifically-advanced ingredients. D-Aspartic Acid, an innovative breakthrough in cutting-edge performance nutrition, is now available as a high-quality, 100% pharmaceutical-grade daily supplement."

   e. "DAA Pure is designed for use by healthy adult men"

   f. "take 4 capsules daily"

/ / /

/ / /

**COMPLAINT FOR PATENT INFRINGEMENT**

g. "As a dietary supplement for healthy adult men, take 4 capsules daily or as directed by a healthcare professional.  Daily serving may be taken all at once or split up and taken throughout the day."

h. DAA Pure provides 3 grams per serving of D-Aspartic Acid

**"Propadrol" (Defendant EST Nutrition's Infringing Product)**

54.    Defendant EST Nutrition ships, distributes, offers for sale, sells, and advertises the product "Propadrol," and the product is marketed under the EST Nutrition brand of products.

55.    Defendant All Star is a retailer and distributor of Defendant EST Nutrition's products, including Propadrol, and ships, distributes, offers for sale, sells, and advertises the product.

56.    The labels and advertisements for Propadrol state, as relevant to this matter and without limitation, as follows:

a. The product contains "Methyl-2a (D-Aspartic Acid & 5 Methyl-7 Methoxy Isoflavone)"

b. It is to be taken by oral ingestion.

c. "Pro-Testosterone Supporting Formula"

d. "Boost Testosterone Levels"

e. "This full spectrum formula utilizes technologies and science that will set a new standard in Testosterone Enhancement and Therapy"

f. "Anti-Aromatase/Testosterone Booster"

g. "Take four (4) capsules once daily.  Use only for a period of 30 days. Wait 90 days prior to using the product again."

h. The product provides 3 grams per serving of "Methyl-2a (D-Aspartic Acid & 5 Methyl-7 Methoxy Isoflavone)"

///
///
///

**COMPLAINT FOR PATENT INFRINGEMENT**

**"Bulasterone" (Defendant Hi-Tech's Infringing Product)**

57.    Defendant Hi-Tech ships, distributes, offers for sale, sells, and advertises the product "Bulasterone," and the product is marketed under the Hi-Tech Pharmaceuticals brand of products.

58.    Defendant Lone Star is a distributor of Defendant Hi-Tech's products, including Bulasterone, and ships, distributes, offers for sale, sells, and advertises the product.

59.    Defendant All Star is a retailer and distributor of Defendant Hi-Tech's products, including Bulasterone, and ships, distributes, offers for sale, sells, and advertises the product.

60.    The labels and advertisements for the Bulasterone product state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "Sodium D-Aspartic Acid."

    b.  It is to be taken by oral ingestion.

    c.  "The Most Scientifically Advanced Nutraceutical Formulation for Testosterone Enhancement"

    d.  "Bulasterone also contains sodium D-aspartic acid, which studies suggest supports enhanced levels of LH and testosterone using a daily serving amount of 3 grams, which is the exact dosage use in Bulasterone"

    e.  "World's Strongest Testosterone Booster"

    f.  "Take 1-3 tablets in the morning and 1-3 tablets after lunch or prior to training"

    g.  Bulasterone provides 3 grams of Sodium D-Aspartic Acid per day.

61.    Defendant Hi-Tech also manufacturers as a contract manufacturer products that infringe the '908 patent for several other dietary supplement companies.

/ / /

/ / /

**"Dagger" (Defendant Infinite Labs' Infringing Product)**

62.    Defendant Infinite Labs ships, distributes, offers for sale, sells, and advertises the product "Dagger," and the product is marketed under the "Infinite Labs" brand of products.

63.    Defendant All Star is a retailer and distributor of Defendant Infinite Labs' products, including Dagger, and ships, distributes, offers for sale, sells, and advertises the product.

64.    The labels and advertisements for Dagger set forth, as relevant to this matter and without limitation, as follows:

    a.  The product contains "D-Aspartic Acid, D-Aspartic Acid Calcium Chelate, Sodium D-Aspartic Acid"

    b.  It is to be taken by oral ingestion.

    c.  "Supports healthy testosterone levels"

    d.  "scientifically designed to promote testosterone levels"

    e.  "testosterone-boosting components"

    f.  "Dagger combines three different forms of D-aspartic acid, including the highly soluble and bioavailable form D-Aspartic Acid Calcium Chelate, to maximize the release and synthesis of luteinizing hormone (LH) and testosterone"

    g.  "On Workout days, take one serving (one scoop) with 6 to 8 ounces (178 to 237 ml) of water on an empty stomach approximately 30 minutes prior to training.  Do not exceed one scoop before training or in a 24 hour period.  On Non-Training days, take one serving (one scoop) with 6 to 8 ounces (178 to 237 ml) of water.  For best results take Dagger on an empty stomach."

/ / /

/ / /

/ / /

**"Intratest Xtreme" (Defendant Lecheek's First Infringing Product)**

65.     Defendant Lecheek ships, distributes, offers for sale, sells, and advertises the product "Intratest Xtreme," and the product is marketed under the "Lecheek" brand of products.

66.     Defendant Lone Star is a distributor of Defendant Lecheek's products, including Intratest Xtreme, and ships, distributes, offers for sale, sells, and advertises the product.

67.     The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "D-Aspartic Acid (as D-Aspartate Calcium Chelate)"

    b.  It is to be taken by oral ingestion.

    c.  "Testosterone Fueled Recovery Matrix"

    d.  "powdered testosterone booster"

    e.  "You can take Intratest one of two ways. Take one serving during your workout for an effective intra workout recovery product or take another dose before bed to get your clinical dose of D-Aspartic Acid to naturally increase your testosterone levels by up to 42%."

    f.  "As a dietary supplement, Adults Under 200lbs.:  Take one (1) scoop with 8-10 oz. of water during/after workouts.  Adults Over 200lbs.: Take two (2) scoops with 8-10 oz. of water during/after workouts."

    g.  "After 12 weeks of use, discontinue for a minimum of 2 weeks."

**"Speed X3" (Defendant Lecheek's Second Infringing Product)**

68.     Defendant Lecheek ships, distributes, offers for sale, sells, and advertises the product "Speed X3," and the product is marketed under the "Lecheek" brand of products.

/ / /

/ / /

69.   Defendant Lone Star is a distributor of Defendant Lecheek's products, including Speed X3, and ships, distributes, offers for sale, sells, and advertises the product.

70.   The labels and advertisements for Speed X3 state, as relevant to this matter and without limitation, as follows:

    a.   The product contains "D-Aspartic Acid"

    b.   It is to be taken by oral ingestion.

    c.   "Fuels test production"

    d.   "Begin by taking 1 Scoop of Speed X3 30 minutes before any sort of athletic activity.   After tolerance has been assessed, take 2 scoops 30 minutes before [athletic activity]....Never take more than 3 scoops within a 24-hour period."

**Testodrol X9 (Defendant Lecheek's Third Infringing Product)**

71.   Defendant Lecheek ships, distributes, offers for sale, sells, and advertises the product "Testodrol X9," and the product is marketed under the "Lecheek" brand of products.

72.   Defendant Lone Star is a distributor of Defendant Lecheek's products, including Testodrol X9, and ships, distributes, offers for sale, sells, and advertises the product.

73.   The labels and advertisements for the product Testodrol X9 state, as relevant to this matter and without limitation, as follows:

    a.   The product contains "D-Aspartic Acid"

    b.   It is to be taken by oral ingestion

    c.   "Boost Free Testosterone"

    d.   "Testodrol X9 is loaded with 9 of the most effective testosterone boosting ingredients on the market today"

    e.   "It will increase your test levels very quickly...."

/ / /

1          f. "Take 1 serving daily with a full glass of water.  Do not exceed two

2              servings in a 24 hour period.  If consuming two servings daily, spread

3              dosages as evenly as possible."

4 **"X-Fit Power" (Defendant MHP's Infringing Product)**

5     74.    Defendant MHP ships, distributes, offers for sale, sells, and advertises the

6 product "X-Fit Power," and the product is marketed under the MHP brand of products.

7     75.    Defendant Lone Star is a distributor of Defendant MHP's products,

8 including X-Fit Power, and ships, distributes, offers for sale, sells, and advertises the

9 product.

10     76.    Defendant All Star is a retailer and distributor of Defendant MHP's

11 products, including X-Fit Power, and ships, distributes, offers for sale, sells, and

12 advertises the product.

13     77.    The labels and advertisements for the product X-Fit Power state, as

14 relevant to this matter and without limitation, as follows:

15     a.  The product contains "D-Aspartic Acid (DAA)"

16     b.  It is to be taken by oral ingestion.

17     c.  "In a clinical study, a remarkable 87% of subjects taking the same dose

18        of D-aspartic acid (DAA) provided by POWER increased their

19        testosterone level by an average of 42% after only 12 days of

20        supplementation.  POWER uses free DAA, the same form used in

21        clinical research.  DAA is a naturally occurring amino acid."

22     d.  "powerful testosterone booster called DAA"

23     e.  "To support 24 hour muscle building and repair, take 2 tablets of

24        POWER 3 times daily with meals (6 tablets daily)"

25     f.  The product includes 1 gram of DAA per serving of 2 tablets; its

26        instructions instruct users to take 6 tablets daily, meaning 3 grams per

27        day.

28 / / /

**COMPLAINT FOR PATENT INFRINGEMENT**

**"NMDA" (Defendant Muscle Warfare's First Infringing Product)**

78. Defendant Muscle Warfare ships, distributes, offers for sale, sells, and advertises the product "NMDA."

79. The labels and advertisements for the product NMDA state, as relevant to this matter and without limitation, as follows:

    a. The product contains "D-Aspartic Acid"

    b. It is to be taken by oral ingestion.

    c. "Engineered to provide maximum strength amino acid, herbal and mineral based testosterone enhancement"

    d. "NMDA sold by Muscle Warfare and in each product of THE WARFARE STACK is a proprietary mixture of D-Aspartate and N-Methyl-D-Aspartate. When taken orally, they induce dramatic testosterone and growth hormone increasing potential."

    e. "A published Italian study shows an amazing total blood testosterone increase in humans, which is around 42% in only 6-12 days. Other animal models point to dramatic hGH and IGF level increases. All of these findings were substantiated with our in house pilot testing as well."

    f. "3 Grams of D-Asp is a 'very high' dose of D-Asp to use daily. It's just way too high and an equal OR BETTER hormonal increasing effect can be obtained with a much lower dose."

**"MOAB" (Defendant Muscle Warfare's Second Infringing Product)**

80. Defendant Muscle Warfare ships, distributes, offers for sale, sells, and advertises the product "MOAB."

81. The labels and advertisements for the product MOAB state, as relevant to this matter and without limitation, as follows:

    a. The product contains "D-Aspartic Acid."

    b. It is to be taken by oral ingestion.

   c.  The D-Aspartic Acid in the product is sold as an ingredient in a "NMDA Amino Acid Hormonal Amplifying Matrix (Testosterone, Growth Hormone, IGF-1 & IGF-2 Stimulator)."

   d.  "As a dietary supplement, Napalm is a high potency formula that may be mixed in water or your favorite sports drink. To assess for tolerance, begin use by mixing 1/2 to 1 scoop in your beverage of choice, 30 to 45 minutes prior to working out. Very experienced users may use 2 to 3 scoops. Do not exceed recommended dose. Use for 2-3 months before taking a 1 month off cycle. Pyramid dose by tapering at the beginning and end of your cycle."

**"Nuke" (Defendant Muscle Warfare's Third Infringing Product)**

82.    Defendant Muscle Warfare ships, distributes, offers for sale, sells, and advertises the product "Nuke."

83.    The labels and advertisements for the product Nuke state, as relevant to this matter and without limitation, as follows:

   a.  The product contains "D-Aspartic Acid."

   b.  It is to be taken by oral ingestion.

   c.  The D-Aspartic Acid in the product is sold as an ingredient in a "NMDA AMINO ACID HORMONAL AMPLIFYING MATRIX 10mg: (Testosterone, Growth Hormone, IGF1 & IGF-2 Stimulator)."

   d.  "Nuke is a high potency formula that may be mixed in water or your favorite sports drink. To assess for tolerance, begin consuming Nuke by mixing 1 scoop in your beverage of choice, 30-45 minutes prior to working out. Continue to sip throughout your entire workout and 30 minutes after. Cycle info: Use for 2-3 months before taking a 1 month off cycle. Pyramid dosing at the beginning and end of your cycle."

/ / /

/ / /

**COMPLAINT FOR PATENT INFRINGEMENT**

**"Napalm" (Defendant Muscle Warfare's Fourth Infringing Product)**

84.     Defendant Muscle Warfare ships, distributes, offers for sale, sells, and advertises the product "Napalm."

85.     The labels and advertisements for the product Napalm state, as relevant to this matter and without limitation, as follows:

    a.   The product contains "D-Aspartic Acid."

    b.   It is to be taken by oral ingestion.

    c.   The D-Aspartic Acid in the product is sold as an ingredient in a "NMDA AMINO ACID HORMONAL AMPLIFYING MATRIX 10mg: (Testosterone, Growth Hormone, IGF1 & IGF-2 Stimulator) D-Aspartic Acid, N-Methyl-D-Aspartate."

    d.   "As a dietary supplement, Napalm is a high potency formula that may be mixed in water or your favorite sports drink. To assess for tolerance, begin use with 1-2 scoops (Typically, users that weight under 150 lbs should start with 1 scoop) in your beverage of choice, 30 to 45 minutes prior to working out. Very experienced users may consume up to 3 scoops; and very experienced users over 200 lbs may consume up to 4 scoops. Do not exceed recommended dose. Shake contents well prior to every use."

**"T-Up" (Defendant Nutrex's Infringing Product)**

86.     Defendant Nutrex ships, distributes, offers for sale, sells, and advertises the product "T-Up," and the product is marketed under the "Nutrex" brand of products.

87.     Defendant Lone Star is a distributor of Defendant Nutrex's products, including T-Up, and ships, distributes, offers for sale, sells, and advertises the product.

88.     Defendant All Star is a retailer and distributor of Defendant Nutrex's products, including T-Up, and ships, distributes, offers for sale, sells, and advertises the product.

/ / /

89.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "Sodium D-Aspartic Acid"

    b.  It is to be taken by oral ingestion.

    c.  "Nutrex raises the bar on testosterone boosting by bringing you T-UP Black"

    d.  "In one study, the Sodium D-Aspartic Acid used in T-Up led to an average 42% increase in testosterone after only 12 days of use"

    e.  "Days 1-10: Take 5 Black Liqui-Caps twice per day between meals"

    f.  "Day 11 and on:   Take 5 Black Liqui-Caps once per day between meals"

    g.  "Scientific research has shown that the Sodium D-Aspartic Acid in T-UP can be stored in the body and continues to keep testosterone levels elevated for several days even after study participants stopped taking it, supporting the conclusion that the testosterone boosting effects of this product will build up over time"

**"Anabolic Freak" (Defendant's Pharma Freak Infringing Product)**

90.   Defendant Pharma Freak ships, distributes, offers for sale, sells, and advertises the product "Anabolic Freak," and the product is marketed under the Pharma Freak brand of products.

91.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "D-Aspartic Acid (DAA) Calcium Chelate"

    b.  It is to be taken by oral ingestion.

    c.  "The World's Strongest D-Aspartic Acid [DAA] Testosterone Booster!"

    d.  "increases testosterone"

/ / /

    e. "supplies your body with a clinically-proven dose of D-Aspartic Acid (DAA), which accumulates in the pituitary gland and testes and stimulates an increase in luteinizing hormone (LH) and natural testosterone production"

    f. "Serving Size: 2 capsules"

    g. "A typical cycle is 30 days on Anabolic Freak"

    h. Anabolic Freak has 1,560 mg of D-Aspartic Acid Calcium Chelate per serving.

**"D-pol" (Defendant Purus' Infringing Product)**

92. Defendant Purus ships, distributes, offers for sale, sells, and advertises the product "D-pol," and the product is marketed under the "Purus" brand of products.

93. Defendant Lone Star is a distributor of Defendant Purus' products, including D-pol, and ships, distributes, offers for sale, sells, and advertises the product.

94. Defendant All Star is a retailer and distributor of Defendant Purus' products, including D-pol, and ships, distributes, offers for sale, sells, and advertises the product.

95. The labels and advertisements for D-pol state, as relevant to this matter and without limitation, as follows:

    a. The product contains "D-Aspartic Acid"

    b. It is to be taken by oral ingestion.

    c. "42% increase in free testosterone"

    d. "expect intense strength and lean muscle accrual through increased circulating free testosterone levels"

    e. "d-aspartic acid (a chief ingredient in d-pol) has been reported to increase circulating testosterone, d-pol should not be used by women"

    f. "Take 1 serving with a mixed food meal"

    g. "full dosage of 3 tablets per day"

/ / /

h. There are 3,120 mg of D-Aspartic Acid per serving (3 tablets), and the product instructs users to take one serving per day

**"Warrior" (Defendant Reaction's Infringing Product)**

96.   Defendant Reaction ships, distributes, offers for sale, sells, and advertises the product "Warrior," and the product is marketed under the "Reaction" brand of products.

97.   Defendant All Star is a retailer and distributor of Defendant Reaction's products, including Warrior, and ships, distributes, offers for sale, sells, and advertises the product.

98.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

a. The product contains "Sodium D-Aspartic Acid"

b. It is to be taken by oral ingestion.

c. "the strongest and most effective testosterone replacement that your body will ever need"

d. "with a triple stack of testosterone replacement ingredients to increase natural testosterone levels and block estrogen in the body"

e. "raises testosterone levels that your body cannot normally produce on its own"

f. "Serving Size 2 Capsules"

g. "As a dietary supplement take 2 capsules 1 hour prior to working out. Use in cycles of 6-8 weeks, with a minimum of a 4 week rest period between cycles."

**"Vitality DM" (Defendant Reaction's Other Infringing Product)**

99.   Defendant Reaction ships, distributes, offers for sale, sells, and advertises the product "Vitality DM," and the product is marketed under the "Reaction" brand of products.

///

COMPLAINT FOR PATENT INFRINGEMENT

100.   Defendant All Star is a retailer and distributor of Defendant Reaction's products, including Vitality DM, and ships, distributes, offers for sale, sells, and advertises the product.

101.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "Sodium D-Aspartic Acid"

    b.  It is to be taken by oral ingestion.

    c.  "Increase testosterone by 66% - promote an anabolic environment"

    d.  "a one stop formula for your natural test production (Sodium D-Aspartic Acid & Massularia Acuminate)"

    e.  "As a dietary supplement take 2 pills in the morning before your first meal"

**"Pure Test" (Defendant Finaflex's Infringing Product)**

102.   Defendant Finaflex ships, distributes, offers for sale, sells, and advertises the product "Pure Test," and the product is marketed under the "Finaflex" brand of products.

103.   Defendant Lone Star is a distributor of Defendant Finaflex's products, including Pure Test, and ships, distributes, offers for sale, sells, and advertises the product.

104.   Defendant All Star is a retailer and distributor of Defendant Finaflex's products, including Pure Test, and ships, distributes, offers for sale, sells, and advertises the product.

105.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "Aspartic Acid (DAA)"

    b.  It is to be taken by oral ingestion.

    c.  "PURE TEST is PURE TESTOSTERONE, free from anything inferior, totally refined, clean, true TESTOSTERONE. PURE TEST is made

from 100% HPLC verified D-Aspartic Acid (DAA). D-Aspartic Acid is a NATURAL TESTOSTERONE boosting POWERHOUSE that has been shown to SIGNIFICANTLY increase TESTOSTERONE levels after prolonged use. D-Aspartic Acid has been shown to BOOST TESTOSTERONE in actual HUMAN studies, not in plant, animal, or some bull*%#* laboratory study other supplement companies use to "validate" their latest ingredients. Taken regularly PURE TEST results in increased strength, energy levels, and sex drive. Boost your test with the best, FINAFLEX PURE TEST!"

d. "Serving Size:  1 Capsule"

e. "As a dietary supplement take 4-6 capsules daily for 30 days consecutively.  Take FINAFLEX PURE TEST every night at bedtime to maximize effectiveness as a testosterone elevator.  For optimal results use PURE TEST for 6-12 weeks.  For extreme results take two servings of PURE TEST, spaced 12 hours apart, for 4-8 weeks."

f. The product provides 500 mg of DAA per serving.

g. Instructions are to take at least 2 capsules, but up to 6, per day, which equals or well exceeds 1 gram per day.

**"Revolution PCT" (Defendant Finaflex's Second Infringing Product)**

106.  Defendant Finaflex ships, distributes, offers for sale, sells, and advertises the product "Revolution PCT," and the product is marketed under the "Finaflex" brand of products.

107.  Defendant Lone Star is a distributor of Defendant Finaflex's products, including Revolution PCT, and ships, distributes, offers for sale, sells, and advertises the product.

108.  Defendant All Star is a retailer and distributor of Defendant Finaflex's products, including Revolution PCT, and ships, distributes, offers for sale, sells, and advertises the product.

109.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.   The product contains "D-Aspartic Acid (DAA) (as part of a "Testosterone Amplification Blend")"

    b.   It is to be taken by oral ingestion.

    c.   "PCT Revolution will revitalize testosterone levels leading to increased energy, strength, and sex drive"

    d.   "Amplify Testosterone"

    e.   "As a dietary supplement take 2-4 capsules at night before bed.  For best results continue use of PCT Revolution for 4-8 weeks.  DO NOT exceed 8 weeks of continued use."

**"Ignite 2" (Defendant Finaflex's Third Infringing Product)**

110.   Defendant Finaflex ships, distributes, offers for sale, sells, and advertises the product "Ignite 2" and the product is marketed under the "Finaflex" brand of products.

111.   Defendant Lone Star is a distributor of Defendant Finaflex's products, including Ignite 2, and ships, distributes, offers for sale, sells, and advertises the product.

112.   Defendant All Star is a retailer and distributor of Defendant Finaflex's products, including Ignite 2, and ships, distributes, offers for sale, sells, and advertises the product.

113.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.   The product contains "AMINOSTERONE (d-Aspartic Acid Diethyl Ester HCL), d-Aspartic Salt"

    b.   It is to be taken by oral ingestion.

    c.   "Built with AMINOSTERONE a revolutionary new amino acid derivative that skyrockets total testosterone in under 30 days"

d. "Built with AMINOSTERONE a revolutionary new d-Aspartic Acid derivative that skyrockets total testosterone in under 30 days…AMINOSTERONE has been shown to be 400 times more soluble than regular d-Aspartic Acid when mixed into solution, leading to higher absorption and bioavailability in the body."

e. "As a dietary supplement, mix 1 scoop with 6-12 ounces of cold water and consume 5-15 minutes prior to workout….For best results consume IGNITE 2 on training and non-training days to maximize effectiveness of ingredients AMINOSTERONE & Crea-Trona"

**"V30+" (Defendant SNI's Infringing Product)**

114.   Defendant SNI ships, distributes, offers for sale, sells, and advertises the product "V30+" and the product is marketed under the "SNI Global" brand of products.

115.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

a. The product contains "D-Aspartic Acid."

b. It is to be taken by oral ingestion.

c. "If you're a male over 30 chances are the age-related decline in natural testosterone levels has you feeling like 1/2 the man you once were."

d. "V30+ is designed to help restore the youth and vigor you once had to improve libido, mental focus and overall well being."

e. "V30+ is designed to be used on a daily basis.   For best results consume two (2) capsules in the morning and another two (2) capsules in the evening."

f. "For an immediate libido boosting effect all four (4) capsules can be taken all at once if desired."

/ / /

/ / /

/ / /

COMPLAINT FOR PATENT INFRINGEMENT

**"D-Aspartic Acid" (Defendant Ethitech's Infringing Product)**

116.   Defendant Ethitech ships, distributes, offers for sale, sells, and advertises the product "D-Aspartic Acid," and the product is marketed under the "Ethitech" brand of products.

117.   The labels and advertisements for the product state, as relevant to this matter and without limitation, as follows:

    a.   The product contains "D-Aspartic Acid."

    b.   It is to be taken by oral ingestion.

    c.   "DAA is a revolutionary new dietary supplement ingredient based on a naturally occurring amino acid found in the body.  It rapidly increases the production of the testosterone via the pituitary gland and the testes by enhancing the cellular production of signal molecules that control the secretion of LH and testosterone."

    d.   "take 1 scoop one time per day with breakfast or your first meal of the day"

    e.   "As a dietary supplement, take 1 scoop one time per day with breakfast or your first meal of the day."

    f.   There are 3 grams per serving of D-Aspartic Acid in the product.

## IV.   THE DEFENDANTS' INFRINGEMENTS

118.   Defendants have committed the tort of patent infringement within the State of California, and more particularly, within the Central District of California, by virtue of the fact that Defendants have shipped, distributed, offered for sale, sold, and advertised, and continue to ship, distribute, offer for sale, sell, and advertise the accused products in this District.

## A.  DIRECT INFRINGEMENTS

119.   Defendants' employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities, have taken, used, and orally administered the accused products,

which Defendants have uniformly formulated and distributed and sold to include a D-aspartic acid compound as defined in the '908 patent for the specific reason of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound present in the product in an amount and for a time sufficient to increase the levels of testosterone.

120. Defendants have encouraged and/or is aware of these persons' oral administration of the accused products for these purposes, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing the method disclosed in the '908 patent.

121. Therefore, Defendants directly practice the method as set forth in the '908 patent and they are all direct infringers of the patent.

## B. INDIRECT INFRINGEMENTS

122. End-users of Defendants' products that infringe the claimed method are also direct infringers of the '908 patent, because they have taken, used, and orally ingested the accused products which Defendants have all formulated to include a D-aspartic acid compound as defined in the '908 patent for the specific reason of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the a D-aspartic acid compound as defined in the '908 patent present in the products in an amount and for a time sufficient to increase their levels of testosterone.

123. These end-users practice the method as set forth in the '908 patent and are direct infringers of the patent.

124. Defendants' labels and advertising for the accused products explain the elements and essential elements of the method disclosed in the '908 patent to end-users and encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice that method, and end-users do practice that method.

125.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of the patent, and have in fact urged them to do so.

126.   Defendants' accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products nor for the D-aspartic acid compound as defined in the '908 patent in those products that do not infringe upon the method disclosed in the '908 patent.

127.   The inclusion of the D-aspartic acid compound in the products is material to practicing the method disclosed in the '908 patent.

128.   Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of the method disclosed in the '908 patent, and, indeed, Defendants encourage, urge, and induce the products' end-users to purchase and orally administer the accused products to practice that method, and have done so in the past.

129.   Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purpose, without limitation, of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound as defined in the '908 patent present in the products in an amount and for a time sufficient to increase the levels of testosterone.

130.   Defendants had actual, first-hand knowledge of the '908 patent after the June 19, 2012 issuance of the patent, the day of which a very publicly available and widely known press release was issued by Plaintiff announcing the issuance of the patent. The press release stated as follows:

> "ThermoLife International, LLC (ThermoLife) announced today that the United States Patent and Trademark Office (USPTO) issued U.S. Patent No. 8,202,908 (the '908 patent) for ThermoLife's novel use of D-Aspartic acid (DAA). The patented

**COMPLAINT FOR PATENT INFRINGEMENT**

method uses a DAA compound to increase the levels of testosterone, growth hormone, and/or insulin-like growth factor 1 in adult males. The potential benefits of DAA are astounding and the patented method will transform testosterone boosting dietary supplements and methods.

ThermoLife has a long history of developing innovative and proven products and processes. With the addition of the '908 patent, ThermoLife has been awarded seven patents covering more than 20 various compounds and methods of use, and still has many pending applications in the pipeline and new technologies at various stages of development.

These patents protect ThermoLife's innovative and proven products and methods, as well as validate ThermoLife's market leadership in new dietary ingredient research. These patents also allow ThermoLife to continue building confidence with its licensing partners and give consumers and companies that work with ThermoLife assurance that they are buying one-of-a-kind products that they cannot get elsewhere.

**About Thermolife**

Founded in 1998, ThermoLife is dedicated to developing real products and methods that work. ThermoLife is a leading manufacturer in the sports nutrition and supplement industry. ThermoLife is committed to developing only the purest, most effective, and innovative products. For more information about ThermoLife and its patents, or to license any of ThermoLife's patented ingredients contact Ron Kramer at Ron(at)ThermoLife(dot)com."

///

COMPLAINT FOR PATENT INFRINGEMENT

131.   Thereafter, Plaintiff sent communications to each Defendant between June 2012 and October 2012 to notify them of the patent and their infringements.

132.   Plaintiff actually began potential licensing discussions with several of the Defendants, thereby cementing these Defendants' actual, first-hand knowledge of the existence of the patent, but those discussions were not fruitful.

133.   Defendants have brazenly and willfully decided to infringe the '908 patent despite knowledge of the patent's existence and each of their infringements of the patent.

134.   At a minimum, and in the alternative, Plaintiff pleads that Defendants willfully blinded themselves to the infringing nature of the accused products' sales.

135.   Defendants have not ceased their own direct infringements, contributory infringements, or inducements of infringements by end-users despite their clear knowledge of the '908 patent.

136.   In sum, Defendants specifically induce end-users to use the accused products, and particularly the d-aspartic acid compound in these products, for increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the d-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone, which is the very method described in the '908 patent.

137.   This method is the sole reason Defendants includes the d-aspartic acid compound in their products, and end-users' experiences are consistent with the fact that they have practiced the method, in that end-users have increased their the levels of testosterone by ingesting the d-aspartic acid compound present in the accused products.

138.   Defendants' infringing activities have not stopped despite their knowledge of the patent's existence.

139.   Defendants Lone Star and All Star have also continued to distribute and sell other companies' infringing products in addition to the accused products, despite their knowledge of the patent's existence.

COMPLAINT FOR PATENT INFRINGEMENT

## V.   **FIRST CAUSE OF ACTION**

### Infringement of U.S. Patent No. 8,202,908

140.   Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

141.   All of the Defendants have in the past and still are literally infringing or infringing under the doctrine of equivalents, directly and indirectly through contributory and/or induced infringement, claim 1 of the '908 patent by making, using, selling, and offering for sale dietary supplements embodying claim 1 of the patented invention, and will continue to do so unless enjoined by this Court.

142.   Defendants Better Body Sports, Allmax, EST Nutrition, Ethitech, Finaflex (by virtue of the accused product Pure Test), MHP, Hi-Tech, Performance Edge, Pharma Freak, and Purus have in the past and still are literally infringing or infringing under the doctrine of equivalents, directly and indirectly through contributory and/or induced infringement, claim 2 of the '908 patent by making, using, selling, and offering for sale dietary supplements embodying claim 2 of the patented invention, and will continue to do so unless enjoined by this Court, by virtue of the fact that in addition to infringing claim 1 of the '908 patent, their accused products contain the D-aspartic acid compound in an amount that, when administered pursuant to the products' instructions for use, leads to an ingestion of equal or exceed 1 to 20 grams of the D-aspartic acid compound daily.

143.   Examples of Defendants' direct infringement include, without limitation, the fact that Defendants' employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities, have taken, used, and orally administered the accused products which have the effect, without limitation, of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone.

**COMPLAINT FOR PATENT INFRINGEMENT**

144.   Defendants have encouraged and are aware of these persons' oral administration of the accused for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the method set forth in the '908 patent.

145.   End-users of Defendants' accused products are also direct infringers of the '908 patent, because they have taken, used, and orally ingested the accused products which have the effect, without limitation, of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone.

146.   Therefore, these end-users practice the method as set forth in the '908 patent and directly infringe the patent.

147.   Defendants' labels and advertising explain the elements or essential elements of the method disclosed in the '908 patent to end-users and encourage, urge, and induce the products' end-users to purchase and orally administer the accused products to practice that method.

148.   The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the products disclose any uses for the D-aspartic acid compound in the products that do not infringe upon the method disclosed in the '908 patent.

149.   Defendants have knowledge that the accused products are especially adapted by end-users of the products for increasing the levels of testosterone in adult male humans taking the accused products, by having them orally ingest the D-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone.

150.   Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the products to increase the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid

1  compound present in the products in an amount and for a time sufficient to increase the
2  levels of testosterone – and Defendants have done so in the past.

3  151.   Defendants therefore are liable for contributory infringement of claim 1
4  and, as noted above for some of the products, claim 2 of the '908 patent.

5  152.   Defendants have intentionally and knowingly induced, encouraged, and
6  urged end-users of the accused products to purchase and orally administer the products
7  for the purpose, without limitation, of increasing the levels of testosterone in adult male
8  humans taking the products, by having them orally ingest the D-aspartic acid compound
9  present in the products in an amount and for a time sufficient to increase the levels of
10  testosterone.

11  153.   Defendants have actual, first-hand knowledge of the '908 patent, but have
12  not ceased their contributory infringement or inducement of infringements by end-users
13  despite their knowledge of the '908 patent.

14  154.   Defendants are therefore liable for induced infringement of claim 1 and, as
15  noted above for some of the products, claim 2 of the '908 patent.

16  155.   Defendants' activities have been without express or implied license by
17  Plaintiff.

18  156.   The infringements by Defendants have been and continue to be willful,
19  since the infringements have not ceased.

20  157.   As a result of Defendants' acts of infringement, Plaintiff has suffered and
21  will continue to suffer damages in an amount to be proved at trial.

22  158.   As a result of Defendants' acts of infringement, Plaintiff has been and will
23  continue to be irreparably harmed by Defendants' infringements and inducements,
24  which will continue unless Defendants are enjoined by this Court.

25  159.   Plaintiff believes that Defendants' past infringements and/or continuing
26  infringements have been deliberate and willful, and that this case is therefore an
27  exceptional case, which warrants an award of treble damages and attorneys' fees in
28  accordance with 35 U.S.C. § 285.

# VI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of judgment against Defendants as follows:

1.   A declaration that Defendants have infringed the '908 patent under 35 U.S.C. §§ 271 *et seq.*;

3.   That injunctions, preliminary and permanent, be issued by this Court restraining Defendants, their respective officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the '908 patent;

4.   That Defendants be required to provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendants' infringement of the '908 patent, and that Plaintiff be awarded damages adequate to compensate Plaintiff for the wrongful infringing acts by Defendants, in accordance with 35 U.S.C. § 284;

5.   That the damages awarded to Plaintiff with regard to the '908 patent be increased up to three times, in view of Defendants' willful infringement, in accordance with 35 U.S.C. § 284;

6.   That this case be declared to be exceptional in favor of Plaintiff under 35 U.S.C. § 285, and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action;

7.   That Plaintiff be awarded its interest and costs of suit incurred in this action;

8.   Compensatory damages;

9.   Punitive damages; and

10.   That Plaintiff be awarded such other and further relief as this Court may deem just and proper.

/ / /

/ / /

Respectfully submitted,

NEWPORT TRIAL GROUP
A Professional Corporation

Dated:  October 26, 2012

By:   Tyler J. Woods
      Attorneys for Plaintiff

**COMPLAINT FOR PATENT INFRINGEMENT**

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial for all issues in this case that properly are subject to a jury trial.

Respectfully submitted,

NEWPORT TRIAL GROUP
A Professional Corporation

Dated:  October 26, 2012

By: _____
Tyler J. Woods
Attorneys for Plaintiff

**COMPLAINT FOR PATENT INFRINGEMENT**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV12- 9229 GAF (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:  NEWPORT TRIAL GROUP
Tyler J Woods, Bar No. 232464
Richard H Hikida, Bar No. 196149
Scott J. Ferrell, Bar No.  202091
895 Dove Street, Suite 425
Newport Beach, Ca  92660

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| THERMOLIFE INTERNATIONAL, LLC | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV12-09229 GAF (FFMx)** |
| v. | |
| BETTER BODY SPORTS, LLC; BIO-ENGINEERED SUPPLEMENTS AND NUTRITION, INC.; ALLMAX NUTRITION INC.; *See Attached* DEFENDANT(S). | **SUMMONS** |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Newport Trial Group</u>, whose address is <u>895 Dove Street, Suite 425, Newport Beach, CA  92660</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _OCT 2 6 2012_

By: ___ROLLS ROYCE___
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

SUM-200(A)

| SHORT TITLE: THERMOLIFE INTERNATIONAL, LLC v BETTER BODY SPORT | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

BRONSON LABORATORIES, INC.; ENGINEERED SPORTS TECHNOLOGY, LLC;  HI-TECH PHARMACEUTICALS, INC.; INFINITE LABS, LLC; LECHEEK, LLC; MAXIMUM HUMAN PERFORMANCE, LLC; MUSCLE WARFARE, INC.; NUTREX RESEARCH, INC.; PHARMAFREAK HOLDINGS INC.; PURUS LABS, INC.; REACTION NUTRITION, LLC; REDEFINE NUTRITION LLC; SNI, LLC; TIGER FITNESS INC.; LONE STAR DISTRIBUTION; and ALL STAR HEALTH

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC | BETTER BODY SPORTS, LLC; BIO-ENGINEERED SUPPLEMENTS AND NUTRITION, INC.; ALLMAX NUTRITION INC.; BRONSON LABORATORIES, INC.; ENGINEERED SPORTS TECHNOLOGY, LLC; et al. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| NEWPORT TRIAL GROUP, 895 Dove Street, Suite 425, Newport Beach, CA 92660<br>Tel; (949) 706-6464    Fax (949)706-6469 | |

| II. BASIS OF JURISDICTION (Place an X in one box only.) | III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only<br>(Place an X in one box for plaintiff and one for defendant.) |
|---|---|

| II. BASIS OF JURISDICTION | | III. | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☑ 4 | ☑ 4 |
| ☐ 2 U.S. Government Defendant | ☑ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☐ No    ☑ MONEY DEMANDED IN COMPLAINT: $ TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §§ 1331, 1338, and 1367

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☑ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

| FOR OFFICE USE ONLY:    Case Number:   **CV12-09229 GAF (FFMx)** |
|---|
| AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW. |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | THERMOLIFE INTERNATIONAL, LLC - Maricopa County, Arizona |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | multiple counties |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff's Claim - Los Angeles County, CA | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date October 26, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |